RECORD NO. 14-1257

In The
# United States Court Of Appeals
## For The Fourth Circuit

**FRANCIS GERARD HALL,**

*Plaintiff – Appellant,*

v.

**SHAWN R. EFIMENCO,**

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

## BRIEF OF APPELLANT

**Dale Edwin Sanders**
ATTORNEY AT LAW
218 North Lee Street
Alexandria, VA 22314
(703) 837-1650

*Counsel for Appellant*

**Patricia A. Smith**
LAW OFFICES OF
PATRICIA A. SMITH
500 Montgomery Street
Suite 400
Alexandria, VA 22314
(703) 548-3774

*Counsel for Appellant*

GibsonMoore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1257 Caption: Francis Gerard Hall v. Shawn R. Efimenco

Pursuant to FRAP 26.1 and Local Rule 26.1,

Francis Gerard Hall
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Dale Edwin Sanders Date: April 22, 2014

Counsel for: Appellant

## CERTIFICATE OF SERVICE

**************************

I certify that on April 22, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Dale Edwin Sanders
(signature)

April 22, 2014
(date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. The Traffic Stop . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. Efimenco Knew Before the Warrant Was Issued that Hall is an Assistant Fire Marshal with Fairfax . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3. Efimenco's Misrepresentations to Commonwealth Attorney Lustig . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4. Efimenco Obtained an Arrest Warrant Based on Misrepresentations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5. Dismissal with Prejudice on Motion of the Commonwealth . . . . . . 12

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. THE TRIAL COURT FAILED TO ADHERE TO WELL-SETTLED STANDARDS FOR CONSIDERATION OF MOTIONS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . 13

III. THE TRIAL COURT'S DECISION ENTERING SUMMARY JUDGMENT ON THE DEFENSE OF QUALIFIED IMMUNITY MUST BE REVERSED . . . . . . . . . . . . . . . . . . . . . . . 16

A. The Facts Establish that Efimenco Violated Hall's Constitutional Right by Procuring an Arrest Warrant Without Probable Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1. The Trial Court Impermissibly Weighed the Facts and Decided All Disputes of Fact in Efimenco's Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2. No Reasonable officer Could Conclude on These Facts That There Was Probable Cause . . . . . . . . . . . . 24

B. The Right to be Free from Arrest without Probable Cause Was Clearly Established in the Law . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Liberty Lobby,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Ashcroft v. al-Kidd,
131 S. Ct. 2074 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Brendlin v. California,
551 U.S. 249 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Brinegar v. United States,
338 U.S. 160 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Brosseau v. Haugen,
543 U.S. 194 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Butz v. Economou,
438 U.S. 478 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dunaway v. New York,
442 U.S. 200 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Goodwin v. Metts,
885 F.2d 157 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Greater Baltimore Center for Pregnancy Concerns, Inc. v.
City of Baltimore,
721 F.3d 264 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Groh v. Ramirez,
540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Harlow v. Fitzgerald,
457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Henry v. Purnell,
652 F.3d 524 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Henry v. United States,
361 U.S. 98 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Merchant v. Bauer,
677 F.3d 656 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Miller v. Prince George's County,
475 F.3d 621 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Pearson v. Callahan,
555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 24

PHP Healthcare Corp. v. EMSA Ltd. P'ship,
14 F.3d 941 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Redd v. N.Y. State Div. of Parole,
678 F.3d 166 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Reichle v. Howards,
132 S. Ct. 2088 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rogers v. Stem,
2013 U.S. Dist. Lexis 93310 (E.D. Va. July 2, 2013) . . . . . . . . . . . . . . . . 20

Scott v. United States,
436 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tolan v. Cotton,
134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) . . . . . . . . . . . . . . . . 13, 14, 15, 16

Torchinsky v. Siwinski,
942 F.2d 1257 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wood v. Moss,
___ U.S. ___, 2014 U.S. Lexis 3614
(Docket No. 13-115 decided May 27, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 17

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Va. Code § 10.1-1135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Va. Code Ann. § 18.2-174.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 25

Va. Code Ann. § 27-34.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Constitutional Provisions**

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Rule**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Jurisdiction was appropriate in the trial court pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.

The trial court issued its final judgment disposing of all claims on February 21, 2014. Joint Appendix at p. 150 (hereinafter referred to as "JA"). Plaintiff filed his Notice of Appeal on March 14, 2014.

## STATEMENT OF THE ISSUES

1. Whether the trial court's decision on summary judgment was contrary to law and fact, and the result of drawing inferences crediting the evidence of the defendant instead of that of the plaintiff who was the nonmoving party.

2. Whether the trial court erred in finding the defendant had probable cause to arrest plaintiff on a charge of impersonating a fire marshal when in fact defendant knew the plaintiff was an Assistant Fire Marshal.

3. Whether the trial court erred in finding the defendant was entitled to qualified immunity.

## STATEMENT OF THE CASE

Plaintiff, Francis Hall, brought this cause of action against Shawn Efimenco, a Stafford County Deputy Sheriff, for an unlawful arrest. In violation of the Fourth Amendment to the United States Constitution, Efimenco obtained a

an arrest warrant without probable cause.  JA 5.  Plaintiff is, and was at all times

pertinent hereto, an Assistant Fire Marshal with Fairfax County.  JA 23.  The

cause of action alleged that at a traffic stop, Hall informed Efimenco that he is a

fire marshal.  Subsequently, Efimenco obtained an arrest warrant alleging that Hall

impersonated a fire marshal.  Within two weeks of the warrant being issued, the

charge was dismissed with prejudice and the record expunged.

   After discovery, Defendant filed a Motion for Summary Judgment on

January 23, 2014, claiming that defendant was entitled to qualified immunity and

that he obtained the warrant with probable cause.   JA 3.  Plaintiff filed his

opposition on February 7, 2014.  JA 3.

   The trial court granted the Defendant's motion and issued a memorandum

opinion and final judgment on February 21, 2014.  JA 150.  This appeal followed.

The Notice of Appeal was filed on March 14, 2014.  JA 160.

**Statement of Facts**

   Plaintiff, Francis G. Hall, is an Assistant Fire Marshall with the county of

Fairfax.  JA 23, JA 5.  He is "a duly sworn and qualified Assistant Fire Marshall . .

.".  JA 23.  His badge states "Assistant Fire Marshal" and "Inspector."  JA 24

(credentials as of March 27, 2011).  Hall has held that position for 31 years.  Over

his years of service, Hall received "quite a few awards, outstanding performance

awards and memoranda." JA 81. He also received the Bronze Star of Valor for lifesaving from the Fairfax County Fire Department. JA 81.

Since 1989, Plaintiff has been a volunteer firefighter with Stafford County, Station 2. JA 80.

Prior to the incident that is the subject of this litigation, Plaintiff had never been arrested. JA 82.

On March 27, 2011, Hall was on his way home from a nearly all day volunteer shift at the Stafford County Fire Department when he was stopped for speeding by Shawn Efimenco, a Stafford County Deputy Sheriff. JA 83.

**1. The Traffic Stop**

The traffic stop was recorded. The video of the traffic stop is Defendant's Exhibit 4 to the Motion for Summary Judgment. A transcript of the traffic stop was prepared by Detective Lenhart of Stafford County. The transcript states:

> Efimenco: ...May I see your license please and vehicle registration?
>
> Hall: Would it help if I worked for the fire department?
>
> Efimenco: Where at?
>
> Hall: Stafford and Fairfax County. I'm a fire marshal. That's my position.
>
> Efimenco: You're a fire marshal?

Hall:         Yes.

. . .

Efimenco:   . . . you have your creds on you?

Hall:         Umm, let's see what I got . . . [1]

[Hall produced an official-looking building badge with a photograph and affiliation with a county that is issued to law enforcement and firefighters. JA 38, 39. Efimenco did not read what the pass said, but just recognized it to be what it is. JA 39.]

Efimenco:   And you're uh, ok, which one are you out of?

Hall:         Two

Efimenco:   Number Two

Hall:         <unk>[2]

Efimenco:   Alright well slow down for me. You're the second law enforcement I've stopped going 40/25. I want to write tickets.

JA 17-18.

---

[1]    Hall did not produce his Fire Marshal credentials. He was driving his personal vehicle at the time. His credentials were kept in his county car in the trunk when they were not on him. JA 87.

[2]    Hall testified that Efimenco's addition to the transcript to add the hand-written notation of "inspector" was not accurate, JA 84, and that in the portion designated as inaudible, he believed it was "Stafford volunteer" or something like that. JA 85.

Efimenco testified that he believed Hall said he was a fire marshal out of Stafford, and that he was unclear about him being employed in Fairfax. JA 37. He testified that when Hall gave him a badge identification that he did not read it, that it could have been from either Fairfax or Stafford. JA 39. There was nothing suspicious about Hall's behavior at the traffic stop. JA 46.

It was several weeks after the event before Efimenco made any notes concerning the traffic stop or prepared a report.[3] JA 40. Efimenco never asked Hall what he did for employment in Fairfax. JA 40. He did not ask Hall where his fire marshal credentials were, JA 41. He did not ask Hall to bring the credentials by the station at a subsequent date. JA 58. But Efimenco testified that a couple of weeks after the fact he became "suspicious" because Hall did not have his credentials at the time of the traffic stop. JA 48.

### 2. Efimenco Knew Before the Warrant Was Issued that Hall is an Assistant Fire Marshal with Fairfax

Efimenco asked Stafford County Deputy Fire Marshal Jason Smith whether Hall was a fire marshal with Stafford; Smith told him no, JA 48, that Hall is a volunteer in Stafford. JA 49. Efimenco told Smith that Hall showed him a badge

---

[3] Efimenco claimed that prior to obtaining an arrest warrant that he reviewed the video of the stop with his sergeant. JA 52. Sgt. Reed testified to the contrary – that he was in the room when Efimenco looked at the tape because Efimenco was using his access code on the computer. JA 124, 125.

that said fire marshal at company 2.[4] JA 94. Efimenco asked Smith to check out Hall's status as fire marshal at Stafford, and then Smith, on his own, followed up on the Fairfax employment. JA 111.

To ascertain what employment Hall had with Fairfax, Smith telephoned Fairfax County Deputy Chief Fire Marshal, Dereck Baker. Smith told Baker that they had a person identifying himself as a Fairfax County fire marshal who was pulled over, and that he wanted to know if he actually worked there. JA 144. According to Smith, when he asked Baker if Hall was a fire marshal in Fairfax, Baker said "he was in the inspection division." JA 102.

Deputy Chief Baker told Smith that Hall is a "fire marshal slash inspector." JA 144.

> Q Any doubt in your mind whether or not you told him that he [Hall] was a fire marshal?
>
> A. There is no doubt in my mind, no.
>
> Q. Okay.
>
> A. Fire marshal slash inspector.

JA 145.

---

[4] This contradicts Efimenco's testimony that he did not read the badge that Hall had shown to him. JA 38, 39.

Deputy Chief Baker testified that Smith said something about "mistaken identity, or, you know – Frank identified himself as a fire marshal in Fairfax County, but the police officer thought it was a fire marshal in Stafford County." JA 146-147.

> Q    So . . . Smith is saying, okay, the officer in Stafford thought Frank said he was a fire marshal in Stafford when he was really a fire marshal in Fairfax.
>
> A.    Yes.

After the conversation with Baker, Smith told Efimenco that Hall is a fire marshal in Fairfax:

> Q    So you explained that to Shawn Efimenco that Hall was one of those types of fire marshals that did not have arrest powers?
>
> A    Yes —

JA 110. Smith gave Efimenco the telephone number for Baker so he could contact him directly for more information if needed. JA 31. Efimenco did not call Baker. JA 50.

### 3.    Efimenco's Misrepresentations to Commonwealth Attorney Lustig

Efimenco consulted Commonwealth Attorney Lustig before obtaining a warrant for Hall's arrest. Several days after their conversation, Mr. Lustig learned

from Detective Lenhart that much of what Efimenco had told him was false. Mr. Lustig learned from Detective Lenhart that "Mr. Hall was (and still is), an Assistant Fire Marshall for Fairfax." JA 25.

Mr. Lustig prepared a memorandum reciting the facts of his discussion with Efimenco. This memorandum, at JA 25-27, was prepared on June 20, 2011, within days of his conversation with Efimenco, and Mr. Lustig testified that its content is trustworthy and accurate. JA 137.

The memorandum states that Efimenco told Lustig that he pulled an individual over for speeding and he "asked if it would help if he worked for the fire department." Efimenco asked him where, and for any credentials. Efimenco told Mr. Lustig that the individual produced an ID card that suggested some type of affiliation with either Stafford or Fairfax. Efimenco said that he asked the individual where he worked and that he replied he was a

> fire marshal at Station 2 here in Stafford and was an Inspector with the Fairfax County Fire Department.

JA 25-26. Efimenco said he later learned from Jason Smith from the Stafford County Fire Department that

> this individual was NOT a fire marshal in either Stafford or Fairfax; while he was an Inspector in Fairfax, he was only a volunteer for Station 2 in Stafford.[5]

JA 26.

Mr. Lustig stated that he concluded from what Efimenco told him that the individual had falsely stated that he was a fire marshal when in fact he was only a volunteer. JA 26; JA 136.

Subsequently, Mr. Lustig met with Detective Lenhart and reviewed Efimenco's police report with the audio tape of the traffic stop. JA 26. Lustig made the following findings:

- In the report, Efimenco wrote that Hall claimed to be a Fire Marshal in Stafford County and an Inspector in Fairfax County – the audiotape shows that Hall did not claim he was a fire marshal in Stafford County.

- Efimenco stated in his report that he advised Hall that he did not recognize him as a fire marshal and that he asked Hall if he was new and where he works out of – the tape showed Efimenco did not say those things.

[5] Contradicting Mr. Lustig's statement, Efimenco testified that he told Lustig that Hall is an Assistant Fire Marshal. JA 73. Efimenco also claims that Mr. Lustig told him there was probable cause to charge Hall, even though Efimenco knew that Hall was in fact an Assistant Fire Marshal. JA 73. This testimony is directly contrary to Mr. Lustig's statement in the memorandum which was prepared contemporaneously with the events.

- Efimenco wrote that Hall's response was he works out of Company 2 – this was also incorrect; the closest they came to that was when Efimenco asked Hall words to the effect of "which one?" to which Hall responded "Two".

- According to Efimenco's report, he contacted Jason Smith with the Stafford County Fire Department and Smith confirmed that Hall was not a fire marshal in either Stafford or Fairfax, but rather only a volunteer out of Company 2 in Stafford and an inspector in Fairfax. By the time Lustig and Lenhart met, Detective Lenhart had positive confirmation that Hall was a fire marshal in Fairfax.

JA 26.

At the meeting with Detective Lenhart, Mr. Lustig also learned that

- Efimenco requested a non-releasable warrant despite the fact that Hall was a 62 year old male with no prior criminal history and a resident in Stafford.

- The warrant ended up being served on Hall around midnight. Efimenco was unable to provide a reason for requesting a non-releasable warrant .

JA 26. Mr. Lustig also had a hand written note on his copy of Efimenco's report stating Efimenco claimed that Hall was falsely accusing the sheriff's office of hog-tying him in the back seat of a cruiser with no air conditioning. Mr. Lustig learned that also was false. "Det. Lenhart had interviewed Mr. Hall who had NOT made that claim." JA 26.

After the meeting with Detective Lenhart, Mr. Lustig determined to dismiss the charge immediately and prepare an order of expungement.[6] JA 27.

The inference from this evidence is that: (1) Efimenco did not tell Lustig that Hall is an Assistant Fire Marshal; and (2) had Mr. Lustig known that Hall is an Assistant Fire Marshal, Mr. Lustig would have told Efimenco that he did not have probable cause to arrest Hall for impersonating a fire marshal.

**4. Efimenco Obtained an Arrest Warrant Based on Misrepresentations**

Efimenco told the magistrate that he stopped Hall for speeding, that Hall said he was a fire marshal with Stafford County and Fairfax, that he learned that Hall is an inspector and not a fire marshal with Fairfax and that he is not a fire marshal out of Stafford county. JA 61.

When Efimenco was asked in deposition if he told the magistrate that Hall was an Assistant Fire Marshal, defense counsel stated, "don't guess or speculate" causing Efimenco to respond, "I don't recall." JA 74.

---

[6] Efimenco testified in deposition taken more than 2 years after the events that he told Mr. Lustig that he found out from Jason Smith and Deputy Chief Baker that Hall was an "inspector but wasn't a fire marshal with arrest powers, and pointing out that difference." JA 51. There is nothing in Lustig's memorandum prepared contemporaneously with the events that corroborates this testimony. There is nothing in the memorandum about "arrest powers" or "police powers." The inference from the evidence is that there was no discussion with Mr. Lustig of arrest powers, and that Efimenco's testimony is not believable.

But Efimenco had already testified that before he obtained a warrant he "already knew" Hall was an inspector and an assistant fire marshal with the ability to issue summonses. JA 67.

The Warrant of Arrest was issued June 6, 2011 for violation of Virginia Code Ann. § 18.2-174.1, "willfully impersonate a fire marshal with the intent to make another believe he was such a public safety personnel." JA 20.

### 5. Dismissal with Prejudice on Motion of the Commonwealth

The charge was dismissed with prejudice on the motion of the Commonwealth, by Assistant Commonwealth Attorney Lustig on June 16, 2011. JA 21.

## SUMMARY OF THE ARGUMENT

The trial court flouted well-settled and time-tested standards for summary judgment. Instead of deciding whether genuine issues of material fact existed for trial, the district court weighed the evidence, made implicit credibility findings, decided disputed facts in favor of the defendant and drew inferences from facts in favor of the defendant. There are numerous key conversations where the content is disputed, and all are at the heart of what Efimenco knew and whether there existed probable cause. As to each and every one of the disputed issues of material fact, the district court decided those disputes in favor of the defendant.

The defendant is not entitled to summary judgment on qualified immunity. Plaintiff's facts establish that the defendant did not have probable cause for the arrest and that he violated the Plaintiff's Constitutional rights. The Plaintiff set forth facts to demonstrate that no reasonable law enforcement officer on these facts could conclude that there existed probable cause to arrest an Assistant Fire Marshal for impersonating a fire marshal, when he only accurately stated his position. Plaintiff also established that the right at issue was clearly established. Properly considering both prongs of the qualified immunity doctrine at summary judgment, the trial court's decision must be reversed.

## ARGUMENT

## I. STANDARD OF REVIEW

The Court reviews de novo an award of summary judgment by the district court, guided by the same legal principles that were applicable below. Greater Baltimore Center for Pregnancy Concerns, Inc. v. City of Baltimore, 721 F.3d 264, 283 (4th Cir. 2013).

## II. THE TRIAL COURT FAILED TO ADHERE TO WELL-SETTLED STANDARDS FOR CONSIDERATION OF MOTIONS FOR SUMMARY JUDGMENT

The same standards for summary judgment apply in cases involving qualified immunity as in any other case. Tolan v. Cotton, 134 S. Ct. 1861, 188 L.

Ed. 2d 895, 901 (2014). Summary judgment is not appropriate unless there exists no genuine issue of material fact in dispute. Fed. R. Civ. P. 56; Greater Baltimore Center for Pregnancy Concerns, Inc. v. City of Baltimore, 721 F.3d at 283. The district court may not resolve disputes of fact, may not make credibility determinations and may not weigh the evidence. The court must view the evidence in the light most favorable to the opposing party, and the court must draw all reasonable inferences in the nonmoving party's favor. Tolan, 134 S. Ct. 1861, 188 L. Ed. 2d at 901; Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Greater Baltimore, 721 F.3d at 283. The court's sole function in considering summary judgment is to determine whether there exists no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Liberty Lobby, supra; Greater Baltimore, 721 F.3d at 283.

These standards are well settled, and where they are violated, the trial court's decision must be reversed. The trial court here violated these standards, as did the district court in Greater Baltimore where the Fourth Circuit stated:

> . . . the district court flouted the well-known and time-tested summary judgment standard. . . . It is elementary that, when a court considers a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255. Moreover, "the judge's function is not himself to weigh

> the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249; see also Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) ("The court's role in deciding a motion for summary judgment is to identify factual issues, not to resolve them." (emphasis and internal quotation marks omitted)); PHP Healthcare Corp. v. EMSA Ltd. P'ship, 14 F.3d 941, 944 n.3 (4th Cir. 1993) ("By definition, no findings of material facts that were in genuine issue are possible in granting summary judgment." (internal quotation marks omitted)).

Where summary judgment is considered on the issue of qualified immunity, the questions are (1) "whether the facts, `taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a [federal] right" and (2) whether the right in question, considered in the context of the specific case, was clearly established at the time of the violation. Tolan, 188 L. Ed. 2d at 900; Brosseau v. Haugen, 543 U.S. 194, 197 (2004). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan, 188 L. Ed. 2d. at 900-901.

As recently as one month ago, the Supreme Court reversed and remanded a case for violation of these basic standards for summary judgment. In Tolan v. Cotton, 134 S. Ct. 1861, 188 L. Ed. 2d 895, 901 (May 5, 2014) the Court held that the Fifth Circuit failed to view the evidence at summary judgment in the light most favorable to Tolan with respect to the central facts, failed to credit Tolan's

evidence, improperly weighed the evidence and resolved disputed issues in favor of Cotton, the moving party. The Court stated that the Fifth Circuit's decision "reflects a clear misapprehension of summary judgment standards in light of our precedents" and that "the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." Tolan, 188 L. Ed. 2d at 903.

The trial court similarly erred here, as is demonstrated in the Section III.A.1. below discussing the facts for the qualified immunity analysis. There are numerous material facts in dispute which require a trial by jury.

## III. THE TRIAL COURT'S DECISION ENTERING SUMMARY JUDGMENT ON THE DEFENSE OF QUALIFIED IMMUNITY MUST BE REVERSED

Plaintiff was arrested for impersonation of a fire marshal. The arrest warrant was obtained by Defendant without probable cause in violation of Plaintiff's constitutional rights. Defendant has not established as a matter of law, and based on undisputed facts, that he had probable cause to believe the plaintiff committed the charged offense or that he is entitled to qualified immunity.

Qualified immunity balances two important interests – that of holding public official accountable and protecting officials from distraction and liability when they perform their duties reasonably. "The protection of qualified immunity

applies regardless of whether the government official's error is `a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Officials are entitled to qualified immunity and protection from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Wood v. Moss, ___ U.S. ___, 2014 U.S. Lexis 3614 (Docket No. 13-115 decided May 27, 2014); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). At issue is the objective reasonableness of the official's conduct as measured by reference to clearly established law. Id.

Qualified immunity is considered under a 2-pronged analysis: (1) do the facts establish that the officer violated a right, and (2) was the right "clearly established" at the time of the action. Wood v. Moss, ___ U.S. ___, 2014 U.S. Lexis 3614 *20; Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2077 (2011). Pearson v. Callahan, 555 U.S. 223 (2009). To defeat qualified immunity, the plaintiff must prove the answer to both prongs is yes. Failure on either prong gives qualified immunity to the officer. See, e.g., Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (holding that agents entitled to qualified immunity because at the time it was not clearly established that an arrest supported by probable cause could give

rise to a First Amendment claim for retaliatory action). The Court may consider the two prongs in any order. Pearson 555 U.S. at 236.

### A. The Facts Establish that Efimenco Violated Hall's Constitutional Right by Procuring an Arrest Warrant Without Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." An arrest, of course, qualifies as a "seizure" of a "person" under this provision." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) quoting Dunaway v. New York, 442 U.S. 200, 207 (1979). "Unquestionably, `[t]he Fourth Amendment prohibits law enforcement offices from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" Merchant v. Bauer, 677 F.3d 656 (4th Cir. 2012).

Probable cause exists if the facts and circumstances known to the officer warrant a prudent man, or reasonable man, in believing that the offense has been committed. Henry v. United States, 361 U.S. 98, 102 (1959); Brinegar v. U.S., 338 U.S. 160, 175-6 (1949). The Fourth Amendment analysis "is predominantly an objective inquiry." al-Kidd, 131 S. Ct. at 2080. "We ask whether `the circumstances, viewed objectively, justify [the challenged] action.'" Id. quoting Scott v. United States, 436 U.S. 128, 138 (1978). See Henry v. Purnell, 652 F.3d

524 (4th Cir. 2011). The Supreme Court has "repeatedly rejected attempts to introduce . . . subjectivity into Fourth Amendment analysis." Brendlin v. California, 551 U.S. 249, 260 (2007).

The question then in the qualified immunity analysis is "whether prudent men in the shoes of these officers . . . would have seen enough to permit them to believe that petitioner was violating or had violated the law." Henry v. United States, 361 U.S. at 102. The assessment requires reference to the elements of the crime charged. The statute states simply:

> § 18.2-174.1. Impersonating certain public safety personnel; penalty
>
> Any person who willfully impersonates, with the intent to make another believe he is, a certified emergency medical services personnel, firefighter, special forest warden designated pursuant to 1. § 10.1-1135, fire marshal, or fire chief is guilty of a Class 1 misdemeanor. A second or subsequent offense is punishable as a Class 6 felony.

By definition, an individual who actually **is** a "certified emergency medical services personnel, firefighter, special forest warden . . ., fire marshal or fire chief" and so asserts that he is, cannot "willfully impersonate" that status.[7] Objectively

[7] The trial court in its opinion talks of "arrest powers" reflecting marshal status. The statute Hall was accused of violating mentions nothing about "arrest powers" or "police powers." A locality may or may not empower fire marshals to make arrests, Va. Code Ann. § 27-34.2, but that is irrelevant to the

viewed, no reasonable person could have believed he had probable cause to arrest an actual, sworn Assistant Fire Marshal for impersonation of a fire marshal.

Efimenco admits that before obtaining the arrest warrant that he knew Hall was an Assistant Fire Marshal. He omitted that fact when he talked with Commonwealth Attorney Lustig, and he omitted that fact when he asked the magistrate for the warrant. It is true that consultations with a Commonwealth Attorney and with the magistrate to obtain a warrant may, in some circumstances,

---

analysis. Having "arrest powers" is not an element of the offense charged, and Hall made no representations about "arrest powers" at the time of the traffic stop. Hall was in fact an Assistant Fire Marshal which Efimenco knew before obtaining the arrest warrant.

The Fourth Amendment probable cause analysis is an objective one and subjective intent is irrelevant. Thus, even if Efimenco believed that the statute incorporated somehow an element of possessing arrest powers, that is a mistake of law that is such a "patently deficient legal understanding of what conduct is prohibited under the statute, that the approval of supervisors and the Commonwealth Attorney does not – as a matter of law – overcome the unreasonableness of the criminal charge and its lack of probable cause." Bauer, 677 F.3d at 664; Rogers v. Stem, 2013 U.S. Dist. Lexis 93310 (E.D. Va. July 2, 2013).

The qualified immunity doctrine applies regardless of whether an officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Groh v. Ramirez, 540 U.S. 551, 567 (2004) citing Butz v. Economou, 438 U.S. 478, 507 (1978). The question is whether the officer's mistaken belief was a reasonable belief. Groh, 540 U.S. at 567. Here, as in Groh and Bauer, no reasonable officer could believe there was probable cause to arrest an Assistant Fire Marshal for impersonating a fire marshal.

insulate the probable cause determination. Torchinsky v. Siwinski, 942 F.2d 1257, 1263 (4th Cir. 1991). But, where the warrant application was so lacking in support for probable cause, and Efimenco deliberately or recklessly omitted material facts and misrepresented facts, obtaining a warrant from a magistrate does not insulate his conduct or the objectively unreasonable arrest. Miller v. Prince George's County, 475 F.3d 621, 631 (4th Cir. 2007) (qualified immunity does not protect an officer who seeks a warrant on the basis of an affidavit that a reasonably well-trained officer would have known failed to demonstrate probable cause – even if the magistrate erroneously issues the warrant); Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989) (grand jury indictment will not shield an officer who deliberately supplied misleading information). "Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity." Miller, 475 F.3d at 627. "With respect to omissions, reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause." Id.

### 1. The Trial Court Impermissibly Weighed the Facts and Decided All Disputes of Fact in Efimenco's Favor

The trial court erred in crediting only Defendant's evidence. Given the posture of the case, on summary judgment, the court was **required** to credit Hall's evidence, and draw inferences in Hall's favor. The trial court did the opposite.

For example, Deputy Chief Baker testified that he told Smith that Hall is an Assistant Fire Marshal:

> Q Any doubt in your mind whether or not you told him that he [Hall] was a fire marshal?
>
> A. There is no doubt in my mind, no.

JA 145. But the trial court credited only Defendant's evidence that Baker did not confirm that Hall was a fire marshal. JA 156. In addition, Smith testified that he told Efimenco that Hall is a fire marshal, one of the types that did not have arrest powers.

> Q So you explained that to Shawn Efimenco that Hall was one of those types of fire marshals that did not have arrest powers?
>
> A Yes —

JA 110. But the trial court credited only Defendant's evidence that Smith said Hall was only an inspector. JA 151, 156. Also, the trial court credited Efimenco's evidence concerning the content of his discussion with the Commonwealth

Attorney, JA 151; the court does not even mention Plaintiff's evidence in Mr. Lustig's contemporaneously prepared memorandum (JA 25-27), which completely contradicts Efimenco's version of the facts. See also footnote 5 infra.

The content of these conversations concern disputed material facts that go to Efimenco's knowledge that Hall is an Assistant Fire Marshal and whether probable cause existed. These are genuine issues of material fact that on summary judgment must be resolved in the nonmoving party's favor. Merchant v. Bauer, 677 F.3d 656, 660 (4th Cir. 2012) (in a case for unlawful arrest for impersonation of a police officer, what Bauer was told by McCotter-Jacobs about the badge authorization constituted a genuine issue of material fact that had to be resolved in Dr. Merchant's favor on Bauer's motion for summary judgment).

Viewing the evidence in favor of the Plaintiff, Efimenco admitted liability when he testified that he knew that Hall was a fire marshal.

The trial court committed reversible erred in weighing the evidence in Efimenco's favor and deciding disputes of fact in favor of Efimenco, the moving party.

### 2. No Reasonable officer Could Conclude on These Facts That There Was Probable Cause

Based on the information available to Efimenco, no reasonable law enforcement officer could think that he had the required probable cause to believe that Hall, as actual Assistant Fire Marshal, had impersonated a fire marshal when he told Efimenco at the traffic stop that he is a fire marshal. Efimenco violated Hall's constitutional rights when he applied for and obtained the arrest warrant without probable cause.

## B. The Right to be Free from Arrest without Probable Cause Was Clearly Established in the Law

This second prong of the qualified immunity analysis requires the court to address whether the right at issue was "clearly established" at the time of the defendant's misconduct. Pearson, 555 U.S. at 232.

> On summary judgment the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful. . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

Harlow v. Fitzgerald, 457 U.S. at 818-819. "The right is clearly established if `it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Merchant v. Bauer, 677 F.3d at 665.

The "existing authority must be such that the unlawfulness of the conduct is manifest." Id. Hall's Fourth Amendment right to be free from an unreasonable seizure is clearly established in the law, as is the requirement for probable cause to support an arrest. As discussed above, an arrest warrant requires probable cause. In addition, the Virginia Code provision with which Hall was charged, § 18.2-174.1, is not a new statute. The language of the provision is clear and unambiguous. It would be clear to any reasonable officer that an actual false statement would be required for willful violation of the impersonation statute. On the facts in this case, no false statement was made. Hall's statement was accurate. He is (and was) a fire marshal. Plaintiff's evidence, which must be credited on summary judgment, establishes that Efimenco knew before he sought the arrest warrant, that Hall is an Assistant Fire Marshal. A reasonable officer would have known that obtaining an arrest warrant anyway based upon omissions and misrepresentations to the Commonwealth Attorney and magistrate was unlawful. A reasonable officer would have known that obtaining an arrest warrant for an

Assistant Fire Marshal for willfully impersonating a fire marshal would be unlawful.

This case is very similar to Merchant v. Bauer, 677 F.3d 656 (4th Cir. 2012), where this court described the officer's legal conclusion of probable cause as "patently deficient." Bauer obtained an arrest warrant for Dr. Merchant charging her with impersonation of a police officer. Dr. Merchant did not claim to be a police officer; she correctly stated her position and work in public safety and never indicated she was in law enforcement. Id. at 660. But Bauer had observed what he believed to be some type of badge in her jacket pocket. Prior to obtaining the warrant, Bauer had confirmed that Dr. Merchant was a department of corrections employee and had obtained additional exculpatory information, but pursued the charge anyway. Id. at 665. The charge was dismissed at trial, with the court stating, "there's no case." Id. at 660. In considering the second prong of the qualified immunity doctrine, this Court stated:

> It is safe to say that at the time of Dr. Merchant's arrest, it was clear that police officers were not at liberty to arrest citizens for impersonating a police officer without any support or probable cause. . . . No reasonable police officer in Bauer's position could have believed that the Fourth Amendment permitted an arrest when no aspect of the Impersonation Statute had been established.

Id. at 666.

As in Bauer, it is safe to say in the present case that at the time of Hall's arrest, it was clear that police officers were not at liberty to arrest citizens for impersonating a fire marshal without any support or probable cause. No reasonable police officer in Efimenco's position could have believed that the Fourth Amendment permitted an arrest of a person for impersonating a fire marshal when that person was in fact an Assistant Fire Marshal.

The constitutional right at issue here was clearly established. This second prong of the qualified immunity analysis must also be found in Hall's favor. The trial court erred in crediting facts solely in favor of the Defendant; its awarding summary judgment on qualified immunity to Defendant must be reversed.

**CONCLUSION**

The trial court erred by entering judgment for the Defendant by drawing inferences and crediting facts favorable to the Defendant. There are several conversations that are key to what Efimenco knew on the issue of probable cause: conversations between Baker and Smith, between Smith and Efimenco, and between Efimenco and Lustig. The content of each conversation is disputed. These are genuine issues of material fact in dispute, but as to each and every one, the trial court decided these disputes of fact in favor of the defendant, Efimenco. On summary judgment the function of the trial court is not to find facts; its

function is solely to determine whether genuine disputes of material fact exist. The trial court impermissibly weighed the evidence, made implicit credibility determinations, decided disputes of fact and drew inferences all in favor of the defendant. The trial court flouted the "well-known, time tested" standards for summary judgment; its decision must be reversed and the case remanded for trial.

Using the correct analysis of qualified immunity on summary judgment, there exists numerous genuine disputes of material fact. With respect to both prongs of that analysis, Plaintiff's evidence establishes that the defendant is not entitled to summary judgment on qualified immunity: the defendant procured the arrest warrant without probable cause; no reasonable officer could conclude that he had probable cause to arrest an actual Assistant Fire Marshal for impersonating a fire marshal; and the right to be free from an arrest without probable cause is clearly established in the law.

Respectfully submitted,

/s/ Patricia A. Smith
PATRICIA A. SMITH, Va. Bar 26090
LAW OFFICES OF PATRICIA A. SMITH
500 Montgomery Street, Suite 400
Alexandria, Va. 22314
(703) 548-3774
(703) 859-7640
E-mail: pasmithaty@aol.com
**Counsel for Appellant Francis Hall**

DALE EDWIN SANDERS
218 N. Lee Street
Alexandria, Va. 22314
(703) 837-1650
Fax: (703) 837-1620
email: dalesanders@sanders.org
**Counsel for Appellant Francis  Hall**

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains 6,147 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportional spaced typeface using Word Perfect in 14 point Times New Roman.

/s/ Patricia A. Smith
Patricia A. Smith

*Counsel for Appellant*

Dated: June 5, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 5, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Broderick C. Dunn
Alexander Francuzenko
COOK CRAIG &
 FRANCUZENKO, PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, VA  22030
(703) 865-7480

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219